JACOB AULT, Appellant v. E. H. HILLYARD ET AL., Appellees.

**Conveyances:** CONSTRUCTION: INTENT OF GRANTOR. In construing a
1  conveyance effect must be given to the intention of the grantor
   as expressed in the language of the instrument.

**Same:** ESTATE GRANTED: RULE IN SHELLEY'S CASE. A conveyance to
2  one for life with the remainder to "the heirs of her body be-
   gotten" is a grant of the fee to a specific class, and such words
   are to be taken as words of purchase to which the rule in Shelley's
   case has no application.

**Appeal:** CHANGE OF THEORY. Where it was contended that the rule
3  in Shelley's case was applicable to the construction of a convey-
   ance, and it was assumed that children of the life tenant were in
   being at the time of the conveyance, it cannot be urged on
   appeal that the effect of the deed was to create a conditional fee,
   which, after the birth of direct issue became absolute.

DEEMER, J., dissenting.

*Appeal from Wayne District Court.*— Hon. H. K. Evans, Judge.

SATURDAY, APRIL 11, 1908.

ACTION in equity to subject certain real estate to the satisfaction of a judgment. A demurrer was interposed to the petition, and sustained. Plaintiff appeals.— *Affirmed.*

*Livingston & Son* and *Poston & Morrow,* for appellant.

*Miles & Steele,* for appellees.

BISHOP, J.— During the year 1868, L. O. Haskell and Angeline, his wife, executed and delivered to Mary J. Hillyard a deed of conveyance as follows: " For the consideration of natural love and affection, we L. O. Haskell and Angeline Haskell, husband and wife, hereby convey to the daughter of said L. O. Haskell, Mary J. Hillyard, for and only for and during her natural life, and to the heirs of her body begotten, in fee simple, to take effect as to said heirs at the death of the said Mary J., their mother, the following described real estate situated in Wayne county," etc. According to the petition Mary J. Hillyard died intestate during the year 1905, leaving surviving her B. Hillyard, her husband, and the defendants in this action, the children of herself and said B. Hillyard. Later in the same year B. Hillyard died intestate, and leaving surviving him only the defendants as his heirs at law. The averment follows that under said deed Mary J. Hillyard took title to the lands described therein in fee simple; that upon her death the said B. Hillyard as surviving spouse became seised in fee of an undivided one-third of said lands, and it is said that he died seised of such interest. It is then alleged that in January, 1897, plaintiff obtained a judgment in the

district court of Wayne county against the said B. Hillyard, which remains unsatisfied. Other allegations of the petition need not be noticed. The prayer is that an execution may issue, etc. The demurrer challenged the sufficiency of the petition generally.

The appeal presents only the question of title arising from the terms of the deed. In determining upon the effect to be given an instrument of conveyance, we are to be guided

1. CONVEYANCES: construction: intent of grantor.

by the intention of the grantor as the same finds expression in the language employed in the instrument. It will be observed that here the conveyance is to Mrs. Hillyard for and only for life, and to the heirs of her body begotten, to take effect as to said heirs upon the death of said Mrs. Hillyard, their mother.

It is a contention of appellant that the words thus employed having relation to heirs are words of limitation, and not words of purchase; accordingly the rule in *Shelley's*

2. SAME: estate granted: rule in Shelley's case.

case — in force in this State at the time — must be given application. As against this position the appellees contend that the words of the instrument are words of purchase; accordingly that, in virtue of the conveyance, they became at once possessed of the fee, but with the right of enjoyment postponed pending the continuance of the life estate. The rule in *Shelley's* case is thus defined in *Doyle v. Andis,* 127 Iowa, 36: " Where a person takes an estate of freehold, legally or equitably, under a deed, . . . and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality to his heirs or heirs of his body, as a class of persons, to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." Without doubt the rule thus stated should be given application here, if found that the words of the deed must be given construction as words of

limitation. But we think such a construction is not warranted. As we gather the intention of the grantor from the language employed by him, the grant is not to a general class, as to the " heirs " or the " heirs of the body," but to a specific class, i. e., the children of Mrs. Hillyard, begotten of her body. The expression " for and only for her natural life " clearly enough indicates a purpose to confine the estate granted by Mrs. Hillyard to a life use. Of course such expression is subject to be controlled by what follows, but, giving it construction in connection with the words that follow the intention, that the conveyance should be taken as a grant of a life estate, with the remainder over to specific persons, is as clear as though such persons had been designated by name. Reduced to a last analysis, the grant is to the heirs begotten of the body of their mother. As generally used, the word " beget " means to procreate, to produce. As the word has reference to the mother, it means, when used in the connection here found, the child or children begotten immediately upon and of her body. And it is well settled that, where a conveyance is to one for life, with remainder over to the children of the life tenant, the words of the grant are to be taken as words of purchase, and the rule in *Shelley's* case has no application. The following cases will be found to be more or less directly in point: *Hopkins v. Grimes,* 14 Iowa, 73; *Kiene v. Gmehle,* 85 Iowa, 312; *Zavitz v. Preston,* 96 Iowa, 52; *Beedy v. Finney,* 118 Iowa, 276; *Taylor v. Taylor,* 118 Iowa, 407; *Wescott v. Binford,* 104 Iowa, 645; *Hubbard v. Goin,* 137 Fed. 822 (70 C. C. A. 320) ; *Daniel v. Whartenby,* 17 Wall. (U. S.) 639 (21 L. Ed. 661) ; *De Vaughn v. Hutchinson,* 165 U. S. 566 (17 Sup. Ct. 461, 41 L. Ed. 827).

Counsel for appellant present in this court the further contention that, conceding the case to be without the operation of the rule in *Shelley's* case, still it remains to be said that the effect of the deed in question was to create a conditional fee in Mrs. Hillyard

3. APPEAL: change of theory.

which, after the birth of direct issue, became absolute. It would seem that this contention is matter of afterthought. The petition to which the demurrer is addressed was quite evidently drawn to present a case for the application of the rule in *Shelley's* case. It is nowhere suggested that at the time of the execution of the deed no children had yet been born to Mrs. Hillyard, and hence that there was no one *in esse* capable of taking the fee. Moreover the court below at the time of entering decree filed an opinion, which appellant has incorporated into and made part of his abstract of the record, and therein no reference is made to the matter of contention now referred to. In this situation we shall assume that, for the purposes of the demurrer, the allegation in the petition of the existence of defendants as children born to Mrs. Hillyard was understood as having reference to the date of the deed. This is fair to the court below, who might have ruled otherwise, had it been understood that the pleading presented a case for a conditional fee in the first taker. Perhaps, also, counsel for defendants would not in such contingency have challenged the sufficiency of the petition by demurrer.

We conclude that the ruling appealed from was right, and it is *affirmed.*

DEEMER, J. (dissenting).— I believe that the first decision of the opinion runs counter to *Kepler v. Larson,* 131 Iowa, 438, the many cases cited therein, and the general principles involved in what is known as the rule in *Shelley's* case. See 4 Words and Phrases, 3267–3268. Surely if this opinion is to stand, *Kepler's* case should be overruled. I believe that decision is sound, and I must dissent in this case. The decree should be reversed.